COURT OF APPEALS
DECISION
DATED AND FILED

November 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP561**

STATE OF WISCONSIN

Cir. Ct. No. **2021ME393**

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE CONDITION OF R. M. R.:

OUTAGAMIE COUNTY,

PETITIONER-RESPONDENT,

V.

R. M. R.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Outagamie County: MARK G. SCHROEDER, Judge. *Order affirmed; order reversed*.

¶1 STARK, P.J.[1] Rita[2] appeals an order for her involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g).[3] Rita argues that Outagamie

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

County failed to present sufficient evidence to support the circuit court's finding that she is not competent to refuse medication. We agree and reverse the order for Rita's involuntary medication and treatment.

## BACKGROUND

¶2      Rita was emergently detained in November 2021 when she was found wandering aimlessly, shivering in wet clothing, and stating that "she was God." The circuit court ultimately entered orders for Rita's involuntary commitment and for her involuntary medication and treatment.

¶3      The circuit court entered orders extending Rita's commitment and for her involuntary medication and treatment in May and November 2022, November 2023, and November 2024. The involuntary medication and treatment order entered after the 2024 extension hearing is the subject of the instant appeal.

¶4      At that extension hearing, Dr. J.R. Musunuru, a psychiatrist, testified that he had been treating Rita for the last three or four years and that he diagnosed Rita as suffering from a major mental illness in the form of schizophrenia. Musunuru stated that Rita's illness is treatable with psychotropic medications, which help control Rita's symptoms, including disrupted sleep, paranoia, grandiosity, unpredictable behavior, and auditory hallucinations.

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

[3] In her notice of appeal, Rita states that she is appealing both the order extending her involuntary commitment and the order for her involuntary medication and treatment. However, in her briefs, she addresses only the order for her involuntary medication and treatment; she does not address the order extending her involuntary commitment. Accordingly, we affirm the order extending Rita's involuntary commitment and do not address it further.

¶5 Doctor Musunuru further testified that Rita's medications have a "significant therapeutic value" to Rita, that she had improved with medication, and that "she is quite frankly normal at this time." When asked if he discussed "the advantages and benefits as well as any disadvantages and alternatives" to Rita's medication with her, Musunuru answered, "Yes" and stated that he has this conversation with Rita approximately five to six times a year. Musunuru stated that Rita "acknowledge[d] her mental illness partially when she was taking medication. When she's not on medication, she doesn't at all." He then opined that Rita continues to be treatable and that she "needs to be treated indefinitely." He further testified that she is incompetent to refuse psychotropic medication because, due to her mental illness, she is not able to understand the advantages and disadvantages of, and alternatives to, the medication she is taking. No report from Musunuru was received into evidence.[4]

¶6 Katie Chaganos, a clinical therapist, testified that she has been working with Rita since February 2022. According to Chaganos, Rita told her that if she were not involuntarily committed, she would not voluntarily seek treatment and would not take her medications.

¶7 The circuit court found that Rita is mentally ill, a proper subject for treatment, and dangerous to herself or others.[5] The court acknowledged Dr.

---

[4] In her appellate brief, Rita states that Dr. Musunuru "did not submit a written report prior to providing testimony." The County does not appear to dispute this fact. Further, there are no references in the hearing transcript to Musunuru having prepared a report, a report being presented to the court, or a report being received into evidence.

[5] Specifically, the circuit court found that Rita is dangerous under WIS. STAT. § 51.20(1)(a)2.a. and 2.c., in conjunction with § 51.20(1)(am), due to testimony that Rita would not voluntarily seek treatment, would decompensate, and would become a proper subject for commitment if treatment were withdrawn.

Musunuru's opinion that Rita is incapable of expressing an understanding of the advantages and disadvantages of, and alternatives to, medication. But, the court found, based on its review of the entire evidentiary record, that the County had failed to prove that Rita was incapable of expressing an understanding of those advantages, disadvantages, and alternatives. Instead, the court found that due to Rita's mental illness, she was "substantially incapable of applying an understanding of the advantages, disadvantages, or alternatives to her condition in order to make an informed choice as to whether or not to accept or refuse psychotropic medication." The circuit court entered orders extending Rita's commitment for twelve months and for her involuntary medication and treatment. Rita now appeals, challenging only the involuntary medication and treatment order. *See supra* ¶1, n.3.

## DISCUSSION

¶8 Rita argues that the County failed to present sufficient evidence to support the circuit court's finding that she is not competent to refuse medication. Rita contends that the County was required to present evidence of the specific medication that she is prescribed, but it failed to do so. Rita further contends that the County failed to present sufficient evidence that she was informed of the disadvantages and alternatives to accepting her particular medication, as is required by WIS. STAT. § 51.61(1)(g)4.

¶9 Whether a county provided sufficient evidence to prove that a person is not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g) presents a mixed question of fact and law. *Outagamie County v. Melanie L.*, 2013 WI 67, ¶¶37-39, 349 Wis. 2d 148, 833 N.W.2d 607. We uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.*, ¶38. Whether those

4

facts meet the statutory requirements is a question of law that we review de novo. *Id.*, ¶39. "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted).

¶10 A patient who is subject to a WIS. STAT. ch. 51 commitment has the right to refuse medication unless the circuit court finds that he or she is not competent to refuse medication. WIS. STAT. § 51.61(1)(g)3. A person is not competent to refuse medication if one of the following is true:

> a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.

> b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, … in order to make an informed choice as to whether to accept or refuse medication or treatment.

Sec. 51.61(1)(g)4. The County bears the burden of proving, by clear and convincing evidence, that the individual is not competent to refuse medication. *Melanie L.*, 349 Wis. 2d 148, ¶37.

¶11 Before a circuit court can find a person not competent to refuse medication, two prerequisites must be established. *Virgil D. v. Rock County*, 189 Wis. 2d 1, 14, 524 N.W.2d 894 (1994). "[T]he circuit court must first be satisfied that the advantages and disadvantages of, and the alternatives to, medication have been adequately explained to the patient." *Id.* The explanation of the proposed medication "should include why a particular drug is being prescribed, what the advantages of the drug are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives to the prescribed medication." *Melanie L.*, 349 Wis. 2d 148, ¶67.

5

¶12    "Second, the [circuit] court must consider the evidence of the patient's understanding, or the lack thereof, regarding the advantages, disadvantages, and alternatives." ***Virgil D.***, 189 Wis. 2d at 14.

> Factors which the court should take into account in reaching its decision include:
>
> (a) [w]hether the patient is able to identify the type of recommended medication or treatment;
>
> (b) whether the patient has previously received the type of medication or treatment at issue;
>
> (c) if the patient has received similar treatment in the past, whether he or she can describe what happened as a result and how the effects were beneficial or harmful;
>
> (d) if the patient has not been similarly treated in the past, whether he or she can identify the risks and benefits associated with the recommended medication or treatment; and
>
> (e) whether the patient holds any patently false beliefs about the recommended medication or treatment which would prevent an understanding of legitimate risks and benefits.

***Id.*** at 15; ***Melanie L.***, 349 Wis. 2d 148, ¶50.

¶13    Regarding the above prerequisites, "it is the responsibility of medical experts who appear as witnesses for the county to explain how they probed the issue of whether the person can 'apply' his or her understanding to his or her own mental condition." ***Melanie L.***, 349 Wis. 2d 148, ¶75. "For both the patient and the medical professional, facts and reasoning are nearly as important as conclusions." ***Id.***

¶14    Rita argues that the County failed to present sufficient evidence to prove she is not competent to refuse medication. She notes that the County failed to provide any evidence specifying the particular medication that she is being

prescribed.[6]  She also notes that some witnesses referred to the singular "medication", while other witnesses referred to the plural "medications."  Thus, she argues that "not only was it unclear what particular medication [she] was prescribed, it was also unclear whether there was more than one medication." Further, Rita argues that Dr. Musunuru's testimony that he discussed the advantages as well as any disadvantages and alternatives to the medication with her and that "[s]he's not able to understand [the disadvantages and alternatives of the medication] basically because of her illness" was perfunctory and insufficient to meet the burden of proving that she is not competent to refuse medication.

¶15  The County responds that there is no legal requirement for Dr. Musunuru to testify at the final hearing as to the specific medication or medications prescribed to Rita or to provide documentary evidence regarding the same.  The County further argues that it was not required to present evidence as to the particular advantages, disadvantages, or alternatives to Rita's specific medication.  The County contends it was merely required to present evidence that the medication prescribed was explained *to Rita* and that the doctor was of the opinion that she is incapable of applying an understanding of that medication and its advantages, disadvantages, and alternatives in order to make an informed choice about whether to take the medication.

---

[6] Rita acknowledges that Dr. Musunuru described her medication as "psychotropic medications."  However, "psychotropic" is a general term that merely means "acting on the mind."  *Psychotropic*, MERRIAM-WEBSTER DICTIONARY, https://www.merriamwebster.com/dictionary/psychotropic (last visited Nov. 14, 2025).  Thus, classifying Rita's medication as "psychotropic" is insufficient to identify the specific medication she is being prescribed.

¶16    We disagree.  Both the applicable statute and Wisconsin case law support Rita's argument that the County is required to present evidence about the specific medication prescribed for and discussed with Rita, together with its advantages, disadvantages, and alternatives, in order for the circuit court to find that Rita is not competent to refuse medication.  We first note that WIS. STAT. § 51.61(1)(g)4. provides: "[A]n individual is not competent to refuse medication or treatment if, because of mental illness, developmental disability, alcoholism, or drug dependence, and after the advantages and disadvantages of and alternatives to accepting *the particular medication or treatment* have been explained to the individual, one of the following is true…."  (Emphasis added.)

¶17    In addition, and as noted above, **Melanie L.** requires that the explanation to the patient of the proposed medication "should include why *a particular drug* is being prescribed, what the advantages *of the drug* are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives *to the prescribed medication*."  **Melanie L.**, 349 Wis. 2d 148, ¶67 (emphasis added).

¶18    In the present case, Dr. Musunuru did testify that he discussed with Rita the particular medication being prescribed to her, and its alternatives, benefits, and side effects.  However, because the County failed to present evidence regarding the specific medication the doctor discussed with Rita, and the disadvantages, side effects and alternatives to that medication, the circuit court was unable to fully consider the factors set forth in **Virgil D.** when determining Rita's understanding, or the lack thereof, regarding the advantages, disadvantages, and alternatives to the medication and treatment prescribed.  *See* **Virgil D.**, 189 Wis. 2d at 14-15.  Without that evidence, the circuit court was unable to assess: (1) Rita's knowledge regarding the medication or medications she was prescribed and

8

her ability to apply an understanding of the advantages and disadvantages of the specific prescribed medication; (2) whether Rita has received that medication in the past and her response to it, and if not, whether she can identify the risks and benefits of taking it; and (3) whether Rita has any false beliefs about the medication that prevent her from understanding its legitimate risks and benefits. Doctor Musunuru did not address these factors in his testimony, and he did not submit a written report which may have otherwise provided details regarding the specific medication being prescribed and the other *Virgil D.* factors.

¶19 The County asserts that it presented sufficient evidence that Rita is not competent to refuse medication because Dr. Musunuru's testimony "stated the substance of the standard and linked it back to the statute clearly and concisely." Further, the County contends that "[t]he specific medications and recitation of the exact advantages, disadvantages, and alternatives to the precise medication is not the statuary standard but rather infuses meaning into the statute which is not present, thereby artificially raising the burden of proof from a clear and convincing standard." We reject these arguments and agree with Rita that the County cannot meet the statutory and case law prerequisites for the court to find her not competent to refuse medication by relying upon conclusory testimony parroting the statutory language without providing facts about the particular medication she is prescribed, together with evidence regarding the advantages, disadvantages, and side effects to that specific medication discussed with her.

¶20 As our supreme court has previously held in *Virgil D.*,

> The focus … should not be upon whether the [circuit] court, the psychiatrist or the County believes the patient's decision [regarding medication] is the wrong choice. Rather, the focus must be upon whether the patient understands the implications of the recommended medication or treatment and is making an informed choice.

*Id.* at 15. We conclude that the circuit court here could not make that determination based upon the evidence presented. Absent evidence regarding the specific medication prescribed, and the advantages, disadvantages, and alternatives that were discussed with Rita, there is no discernable basis in the record for the court's finding that Rita was "substantially incapable of applying an understanding of the advantages, disadvantages, or alternatives to her condition in order to make an informed choice as to whether or not to accept psychotropic medication." Accordingly, we reverse the order for Rita's involuntary medication and treatment.

*By the Court.*—Order affirmed; order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.